# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Quintney Martin, | Case No. 2:22-cv-00833-APG-DJA |
| Plaintiff, | |
| v. | **Order** <br> **and** <br> **Report and Recommendation** |
| Smith's Food & Drug Centers, Inc. dba Smith's Food and Drug; et al., | |
| Defendants. | |

Before the Court is Plaintiff's motion for sanctions (ECF No. 63) and Defendant's countermotion for sanctions (ECF No. 67). Because the Court finds that Plaintiff has demonstrated that Defendant destroyed surveillance footage of the incident at issue, the Court recommends that the parties be permitted to present evidence regarding the destruction of this footage at trial. The Court thus recommends granting Plaintiff's motion in part regarding this evidence. However, because the Court finds that it is premature to determine whether the remaining pieces of evidence—which both sides complain the other destroyed—were indeed destroyed—the Court recommends denying the remainder of Plaintiff's motion without prejudice. For that reason, the Court also denies Defendant's motion in its entirety without prejudice.

## Background

Plaintiff alleges that on March 7, 2021, he was walking into Defendant's store when the automatic doors suddenly closed, hitting him across the face. (ECF No. 63 at 3, 8-12). Plaintiff claims that a manager then approached him and stated that she had seen the incident on camera. (*Id.*). Plaintiff asserts that one of Defendant's managers then called 911 and the North Las Vegas Fire Department appeared on the scene. (*Id.*).

Plaintiff testified in his deposition that the manager then wrote up an incident report while back in the camera room or office and brought Plaintiff a copy of the report. (*Id.*). Plaintiff's

friend who was with him before and during the incident—Raquel Edwards—testified in her deposition that a manager gave her a pen and paper and asked her to write a witness statement. (*Id.*). One week later, Plaintiff retained counsel and sent a preservation of evidence letter to Defendant. (*Id.*). Then, on April 15, 2021, Plaintiff sent another preservation letter. (*Id.*). Both preservation letters listed the date of the incident incorrectly as March 8, 2021, instead of March 7, 2021. (*Id.*).

## I.     Plaintiff's motion for sanctions.

In his motion, Plaintiff argues that Defendant failed to preserve and produce: (1) Defendant's surveillance footage; (2) Defendant's manager's incident report; and (3) Edwards' witness statement. The Court addresses the parties' arguments by each type of evidence.[1]

### A.     *Surveillance footage.*

Plaintiff argues that Defendant did not produce any surveillance camera footage despite the fact that its 30(b)(6) witness testified that, when an incident occurs, Defendant is required to record an hour before and after the incident from every camera that shows it. (ECF No. 63 at 9). Plaintiff adds that the witness testified that if emergency services respond, Defendant puts that footage onto a DVD, which Defendant then keeps on file at the store. (*Id.*). And in any event, Plaintiff points out that Defendant keeps its footage from thirty to forty-five days, meaning that Defendant had the footage when it received Plaintiff's first preservation letter and likely when it received the second. (*Id.*).

Defendant argues that it did not preserve the footage because Plaintiff got the date of the incident wrong in his preservation letters and his complaint, listing it as March 8, 2024 instead of

---

[1] The parties spend much of their briefing disputing the underlying facts of the case. Defendant's version of events is that Plaintiff ran into the door face first because he was not looking where he was going. Plaintiff's version of events is that the doors closed on him. But the Court is not the trier of fact at this stage and declines to decide whose version of events is correct. The Court also declines to analyze the other cases—purporting to show other instances when Defendant has spoliated evidence in state court proceedings—that Plaintiff raises in his motion. These have no bearing on the Court's decision and the Court does not address them here.

the correct date of March 7, 2024. (ECF No. 66 at 10-11). It was not until over a year into the litigation when Plaintiff produced an ambulance record that the parties realized the incident actually happened on March 7, 2024. (*Id.* at 12, 15-16). But by then, the surveillance footage was destroyed. (*Id.*).

In reply, Plaintiff acknowledges that he got the date wrong in his preservation of evidence letters and in his complaint, but notes that it was only one day off. (ECF No. 70 at 8). Plaintiff argues that the single-day discrepancy should not have precluded Defendant from meeting its obligations to preserve the evidence. (*Id.*). Instead, Plaintiff argues that Defendant unilaterally decided that Plaintiff's incident was not serious and ignored its obligations. (*Id.* at 5).

### B. *Defendant's manager's incident report.*

Plaintiff argues that Defendant has not produced any incident reports from the date of the incident. (ECF No. 63 at 8-12). Plaintiff asserts that, instead of producing these reports, Defendant has taken the position in response to Plaintiff's discovery requests that the incident never happened. (*Id.* at 12-14). In response to Plaintiff's interrogatory asking for the identity of witnesses or people with knowledge of the incident, Defendant responded that it was unaware of any person who had knowledge because "Plaintiff did not report the incident to store employees on the day of the alleged incident and the incident was not witness[ed] by any employee." (*Id.*).

In response, Defendant maintains that no incident report was created for Plaintiff's alleged incident because Plaintiff is making it up. (ECF No. 66 at 11). Defendant points to the inconsistencies between Plaintiff's version of events and how the event was described by the person[2] who called 911 and Edwards as proof for this fabrication.[3] (*Id.* at 11-12). As further proof of Plaintiff's fabrication, Defendant points to Plaintiff's statements that the manager who created the incident report brought him copies from the camera room. (*Id.*). But Defendant

---

[2] Plaintiff refers to this person as one of Defendant's managers. Defendant does not acknowledge or admit this, referring to the person who called 911 simply as a caller or person.

[3] The person who called 911 stated that Plaintiff "ran face into the door." (ECF No. 66 at 6). Edwards testified that Plaintiff "walked right into the door." (*Id.* at 17). Plaintiff alleges and testified that the door closed on him. (*Id.* at 17-18).

argues that it does not store incident reports in any type of camera room and does not habitually provide its internal records to customers. (*Id.*).

Plaintiff argues in reply that it is normal for various witnesses have various versions of what happened. (ECF No. 70 at 7). But ultimately, because Defendant has failed to preserve anything from the date of the incident, Plaintiff is left without the ability to bolster his case. (*Id.* at 6-7).

### C. Edwards' witness statement.

Plaintiff argues that when he asked for Edwards' statement in discovery, Defendant responded that it "has no record of Plaintiff's incident occurring at the store." (ECF No. 63 at 13). Although Defendant does not directly address this piece of evidence, Defendant asserts that no witness statements ever existed. (ECF No. 66 at 11-12).

## II. Defendant's countermotion for sanctions.

Defendant moves the Court to sanction Plaintiff, arguing that Plaintiff is lying about the incident and about the incident report. (ECF No. 67 at 14-21). Defendant relies on the different stories of the person who called 911, Edwards, and Plaintiff to support its claim that Plaintiff fabricated the facts of the case. (*Id.*). Defendant argues that Plaintiff also fabricated the date of the event by listing it as taking place on March 8, 2024 in his letters and complaint when it really happened on March 7, 2024. (*Id.* at 15-16). And Defendant argues that Plaintiff is lying about the incident report. (*Id.* at 18-21). In the alternative, Defendant argues that Plaintiff destroyed his copy of the incident report that he testified the manager gave to him. (*Id.*). Defendant points out that Plaintiff conveniently lost the report when his car was repossessed with the report inside. (*Id.*). Defendant concludes that Plaintiff should also be sanctioned for bringing his motion during discovery and before he has completed depositions. (*Id.* at 21).

Plaintiff responds and reiterates that, as would be expected, various witnesses have various versions of the events but Plaintiff cannot prove one or the other without the evidence Defendant did not preserve. (ECF No. 70 at 6-7). Plaintiff adds that the date error in his letter and complaint should not have prevented Defendant from preserving evidence. (*Id.* 8-9). Plaintiff also points out that it is inconsistent for Defendant to argue on one hand that no incident

reports ever existed but to argue on the other hand that Plaintiff has spoliated evidence by losing his copy of the incident report. (*Id.* at 7-8). Plaintiff concludes that Defendant has not identified any prejudice it has suffered that would justify sanctions. (*Id.* at 8-9).

### **Legal standards**

There are two sources for a court's authority to sanction a party for spoliation of evidence: its inherent authority and Federal Rule of Civil Procedure 37(e). *See* Fed. R. Civ. P. 37(e); *see Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). Federal Rule of Civil Procedure 37(e) discusses spoliation of electronically stored evidence ("ESI") and appears to foreclose the application of inherent authority sanctions to ESI. *See* Fed. R. Civ. P. 37(e). However, inherent authority sanctions remain available for physical evidence. [4] So, in determining a motion for spoliation sanctions, the Court must first determine if a party spoliated evidence. Then, it must determine what sanctions are available for that spoliation.

---

[4] Courts in this district have interpreted the 2015 Amendment to Federal Rule of Civil Procedure 37(e) as foreclosing a court's ability to impose sanctions for destruction of electronically stored information based on the court's inherent authority. *See Snap Lock Industries, Inc. v. Swisstrax Corp.*, No. 2:17-cv-02742-RFB-BNW, 2021 WL 864054, at *2-4 (D. Nev. Mar. 5, 2021) (compiling cases). However, the Advisory Committee Notes to that amendment provide that "[t]he new rule applies only to electronically stored information…" Fed. R. Civ. P. 37 Advisory Committee Notes to the 2015 Amendment. The Ninth Circuit has not addressed whether courts are foreclosed from using their inherent authority to impose sanctions for the destruction of physical—as opposed to electronic—evidence. In cases following this amendment, certain courts in this district have continued to apply inherent authority when deciding physical evidence spoliation while others have postulated that the Ninth Circuit will likely apply Rule 37(e) standards to physical, as well as electronic evidence. *See Ski Lifts, Inc. v. Schaeffer Manufacturing Co.*, No. c19-0062-JCC, 2020 WL 1492676, at *3-4 (W.D. Wash. Mar. 27, 2020) (using inherent authority); *see State Farm Fire and Casualty Co. v. General Motors, LLC*, 542 F.Supp.3d 1124, 1128 (D. Idaho June 3, 2021) (using inherent authority); *see Sherwood v. BNSF Railway Co.*, No. 2:16-cv-00008-BLW, 2019 WL 1413747, at *1 (D. Idaho Mar. 28, 2019) (stating that, "[w]hile Rule 37(e) only addresses ESI, I can think of no reason why the same principle should not govern the resolution under common law of a claim that physical evidence was spoliated."). Given the lack of mandatory authority on this issue and that courts continue to utilize inherent authority to address spoliation of physical evidence, the Court employs its inherent authority to address physical evidence.

**I.      Spoliation.**

Spoliation of evidence includes the failure to preserve property for another's use as evidence in a pending or reasonably foreseeable litigation. *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). A party's duty to preserve evidence begins when the party reasonably should have known that the evidence is relevant to anticipated litigation. *Asfaw v. Wal-Mart Stores, Inc.*, No. 2:19-cv-01292-GMN-NJK, 2021 WL 2006283, at *1 (D. Nev. May 19, 2021). The party requesting spoliation sanctions bears the burden of establishing the elements of a spoliation claim. *Id.* The threshold question in a spoliation decision is whether evidence was altered or destroyed. *See Lemus v. Olaveson*, No. 2:14-cv-01381-JCM-NJK, 2015 WL 995378, at *9 (D. Nev. Mar. 5, 2015). If a party alters or destroys evidence, the party requesting spoliation sanctions must further demonstrate that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Asfaw*, 2021 WL 2006283, at * 1 (D. Nev. May 19, 2021). Many courts in the Ninth Circuit hold that a "culpable state of mind includes negligence." *Soule v. P.F. Chang's China Bistro, Inc.*, No. 2:18-cv-02239-GMN-EJY, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020) (compiling cases).

**II.     Rule 37(e) sanctions.**

Federal Rule of Civil Procedure 37(e) provides for sanctions whenever "information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it and it cannot be restored or replaced through additional discovery…" If the non-spoliating party is prejudiced, but the spoliating party did not intend to deprive the non-spoliating party of the information, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," the Court may do one of three things: (1) presume that the lost information was unfavorable to the party; (2) instruct the jury that it may or must presume the information was unfavorable to the party; or (3) dismiss the action or enter a default judgment. Fed. R. Civ. P. 37(e)(2)

### III. Inherent authority sanctions.

When using its inherent authority and considering what sanction is proper upon a finding of spoliation, the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim. *See Soule*, 2020 WL 959245, at *4. The most severe sanction is to strike the defendant's answer, which sanction the court should not impose unless there is clear and convincing evidence of both bad faith spoliation and prejudice to the opposing party. *See id.* (quoting *Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1328-29 (9th Cir. 2011) (internal quotations omitted)). The middle available sanction is to order a rebuttable presumption against the offending party that the evidence, if it had not been despoiled, would have been detrimental to the despoiler. *Id.* To warrant a rebuttable presumption, the offending party must have consciously disregarded its obligation to preserve lost evidence, meaning it must have willfully destroyed the evidence with the intent to harm. *Id.*

The least severe sanction is to enter an adverse jury instruction that an offending party destroyed evidence and that the evidence was unfavorable to the offending party. *Id.* A finding of bad faith is not a prerequisite to an adverse jury instruction. *See id.* (quoting *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)). Rather, simple notice of potential relevance to the litigation will suffice. *Id.* To ensure that a defendant is not prevented from introducing other potentially relevant evidence, the instruction should be crafted to accurately refer only to the information the missing items could have actually provided. *Id.* at *6.

### **Discussion**

As a preliminary matter, neither party identifies the basis for their sanctions request, whether it be the Court's inherent authority or the authority it has under the Federal Rules of Civil Procedure.[5] And other than Plaintiff arguing for case-ending sanctions, neither side clearly

---

[5] Plaintiff refers to the Court's inherent authority and authority under Federal Rule of Civil Procedure 37 interchangeably and then later relies on Nevada Supreme Court cases as if they were precedent. Defendant relies entirely on Nevada law, which reliance Plaintiff points out hypocritically in reply. (ECF No. 70 at 3) ("Defendant's Opposition makes extensive reference to Nevada State law. However federal law applies to the issues at hand, and Mr. Martin has and will cite exclusively to federal law with an emphasis on binding 9[th] Circuit precedent.").

identifies what sanctions are available under what authority for the Court to issue. Despite these deficiencies, the Court finds that the surveillance footage would have been ESI and thus discusses that evidence under Rule 37. Given the parties representations that incident reports and witness statements would have been kept in a file cabinet and that Plaintiff kept a copy of the incident report in his car, the Court determines that the incident report and Edwards' witness statement were physical evidence and that it has the inherent authority to determine sanctions related to that evidence.

### I. Surveillance footage.

#### A. *Whether Defendant spoliated the surveillance footage.*

Plaintiff has met his burden of showing that Defendant spoliated the surveillance footage. Regarding the threshold question of whether the evidence was altered or destroyed, Defendant concedes that the video surveillance from that day has since been destroyed under its retention policy. And Plaintiff has shown the remaining elements of spoliation.

First, Defendant had control over the surveillance footage and had an obligation to preserve it when it was destroyed. Even though Plaintiff's preservation of evidence letters referenced March 8, 2021 instead of March 7, 2021, that was only one day off of the date the incident actually took place. Just because there was a typo in the letters did not absolve Defendant of its obligation to even look for the video footage of the incident. This is particularly true because Defendant's 30(b)(6) witness testified that when emergency services respond to an incident, Defendant is obligated to create a DVD of any footage depicting an incident, creating an independent obligation for Defendant to preserve the footage.

Second, Defendant destroyed the evidence with a culpable state of mind. Defendant does not argue that it preserved evidence from March 8th—instead of March 7th—in response to the letter. Defendant does not assert that it even had one of its employees *look* at the footage from March 8th to see if there was anything there to preserve. And even if it had instructed one of its employees to look at the footage and the employee saw nothing of note, Defendant does not explain why it then did not conduct any further investigation. Defendant was, at the very least, negligent in not preserving this evidence.

Third, the evidence was relevant to Plaintiff's claim because it would have shown exactly what happened that day. Without that evidence, Plaintiff is relying entirely on his testimony and witness testimony. Plaintiff has thus shown that Defendant spoliated evidence and the Court now determines what sanction is appropriate.

### B. What sanctions are appropriate.

Because the surveillance footage is electronically stored, Federal Rule of Civil Procedure 37(e) provides the available sanctions. However, first the Court must determine if Defendant acted with the intent to deprive Plaintiff of the surveillance footage in the litigation. Intent is a close question here.

Defendant relies on the inconsistent positions in its briefing that either the incident did not happen at all or that it was so unserious as to not warrant Defendant's attention. Defendant's first position is untenable. Defendant itself concedes that the incident happened, citing a 911 call in which someone told dispatch, "I had a gentleman entering the store, and the door didn't open, and he ran face into the door, and he's dizzy, um, he just doesn't feel well. He had a – I brought him over here to sit down." (ECF No. 66 at 15).

Defendant's second position, that it did not find the matter to be serious, is no excuse for ignoring a preservation of evidence letter. Defendant asserts that "[t]he truth of the matter is that [Defendant] did not have reason to believe that this alleged incident would become an actual claim for injury at the time of the incident due to the demeanor and joking manner of Plaintiff and his companion." (ECF No. 66 at 13). And while Defendant asserts that it "began to gather whatever scant information was actually available" after receiving the preservation of evidence letter, it does not explain whether that gathering process involved looking at footage.

However, while Defendant appears to have taken little to no action in response to Plaintiff's preservation of evidence letter, it is not clear that Defendant did so in an attempt to keep Plaintiff from having the evidence during litigation. Instead, it appears that Defendant was simply careless. And without more evidence of intentional wrongdoing, the Court will not impute it here.

As a result, the sanctions available to the Court are those "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The Advisory Committee notes to the 2015 amendment of this rule provide that "[i]n an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies." Here, the Court is precluded from employing case dispositive sanctions because it has found that the appropriate analysis for sanctions occurs under subdivision (e)(1) and not (e)(2). So, the Court will not conduct a terminating sanctions analysis.

Instead, the Court finds that the parties should be permitted to present evidence and argument to the jury regarding the loss of information and recommends this sanction. The loss of this surveillance footage is clearly prejudicial to Plaintiff. And the Court finds that a proportional sanction would be to require the trier of fact to hear about and decide the issue of Defendant's failure to preserve this evidence.

## II.     Incident report and Edwards' witness statement.

### A.     *Whether Defendant and/or Plaintiff spoliated the incident report and witness statement.*

Neither side has met their burden of showing that either Defendant or Plaintiff have spoliated the incident report and Edwards' witness statement. The parties disagree over whether the report and statement ever even existed. And, without more, the Court cannot decide either way.

It is also too early for the Court to reach that conclusion. As both sides acknowledge, neither party has deposed Defendant's managers or employees who may have witnessed the event and could testify to the existence of the report and statement. Although Edwards has testified that she wrote her statement and Plaintiff has testified that one of Defendant's managers created a report, given Defendant's adamance that the documents never existed and the fact that discovery is ongoing, the Court is not inclined to decide one way or another at this point. The Court thus

recommends denying Plaintiff's motion for sanctions in part without prejudice regarding these pieces of evidence. The Court also denies Defendant's motion for sanctions without prejudice.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for sanctions (ECF No. 63) be **granted in part and denied in part**. The Court recommends that Plaintiff's motion for sanctions be granted in part such that the parties be permitted to present evidence and argument regarding Defendant's destruction of surveillance footage at trial. The Court recommends that Plaintiff's motion be denied in part in all other respects.

## ORDER

**IT IS FURTHER ORDERED** that Defendant's motion for sanctions (ECF No. 67) is **denied without prejudice.**

## NOTICE

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within (14) days after service of this Notice. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985), *reh'g denied*, 474 U.S. 1111 (1986). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: June 20, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE